UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jason-Kelle McNary, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> Evisu Inc. and David Pun, § <br> § <br> *Defendants*. § | COMPLAINT <br><br> Civil Action No. 1:25-cv-6872 <br><br> Jury Demanded |

Plaintiff Jason-Kelle McNary ("Plaintiff"), by his counsel, Harman Green PC, alleges for his Complaint against Defendants Evisu Inc. and David Pun ("Defendants") as follows:

### **PRELIMINARY STATEMENT**

1. This case is about blatant race discrimination by the owners and operators of a department store in Manhattan.

2. Plaintiff is a Black man who has worked for many years as a reputable name in the New York City fashion industry.

3. Defendants are a store and managers of that store who engage in overt discrimination against employees and customers who are Black.

4. Plaintiff was appalled at how Defendants treated Black customers, particularly how Defendant Evisu maintained a corporate policy to lock the doors to the store when three or more Black individuals were shopping in store.

### **JURISDICTION**

5. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

6. Pursuant to 28 U.S.C. §1367 this Court may properly hear Plaintiff's State and local law claims as they arise out of the same nucleus of operative fact so as to create the same case or controversy.

1

7.  Plaintiff timely filed with the Equal Employment Opportunity Commission, Charge number 520-2023-06350, and received a Right to Sue letter on May 23, 2025. This case was filed within 90 days of receipt of that Right to Sue Letter.

## PARTIES

8.  Plaintiff was and is a resident of New York.

9.  Defendant Evisu Inc. has a principal place of business at 93 Grand St., New York, New York 10013, which is the Evisu Retail Store.

10. Defendant Evisu Inc. was Plaintiff's employer, and is serviceable at C/O SANTORA CPA GROUP, 220 CONTINENTAL DRIVE, SUITE 112, NEWARK, DE, UNITED STATES, 19713.

11. Defendant At all times material, Defendant DAVID PUN (hereinafter referred to as "PUN") was and is Chief Executive Office ("CEO") for Defendant. At all times material, CEO PUN held supervisory authority over Plaintiff with respect to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire.

## JURY DEMAND

12. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

13. Plaintiff is an individual African-American, black male.

14. At all times material, Defendant EVISU INC. was and is a foreign business corporation existing by the virtue and laws of the State of Delaware and doing business in the State of New York.

15. At all times material, Defendant EVISU INC., EVISU GROUP LIMITED, and EVISU GROUP LTD (hereinafter referred to as "EVISU") operate under the same corporate umbrella and were/are Plaintiff's joint and/or single employer.

16. Defendant Evisu is a clothing brand that does both wholesale and retail business.

2

17. At all times material, VANESSA HIU (hereinafter referred to as "HIU") was and is Chief Operating Officer ("COO") for the EVISU Defendants.

18. At all times material, COO HIU held supervisory authority over Plaintiff with respect to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire.

19. HIU is Asian.

20. At all times material, FLORENCE CHEUNG (hereinafter referred to as "CHEUNG") was and is Head of Human Resources for the EVISU Defendants.

21. At all times material, CHEUNG held supervisory authority over Plaintiff with respect to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire.

22. CHEUNG is Asian.

23. At all times material, BRIAN LAW (hereinafter referred to as "LAW") was and is Vice President of Operations for the EVISU Defendants.

24. At all times material, LAW held supervisory authority over Plaintiff with respect to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire.

25. LAW is Asian.

26. At all times material, ALLAN CHAN (hereinafter referred to as "CHAN") was and is Director of Sales of Singapore for the EVISU Defendants.

27. At all times material, CHAN was a supervisor for the EVISU Defendants, controlling many tangible aspects of EVISU employees' job duties, including holding the power to hire and fire.

28. CHAN is Asian.

29. At all times material, TIFFANY WONG (hereinafter referred to as "WONG") was and is Assistant Store Manager for Defendants at the Evisu Retail Store.

30. WONG is Asian.

31. At all times material, ROBERT COOK (hereinafter referred to as "COOK") was and is Sales Manager for Defendants at the Evisu Retail Store.

32. COOK is an African-American, black male.

33. At all times material, CHRISTOPHER AUSTIN (hereinafter referred to as "AUSTIN") was and is Sales Manager for Defendants at the Evisu Retail Store.

34. AUSTIN is an African-American, black male.

35. At all times material, JERRELL FUENTA (hereinafter referred to as "FUENTA") was and is Sales Manager for Defendants at the Evisu Retail Store.

36. FUENTA is an Asian male.

37. At all times material, RICARDO DIAZ (hereinafter referred to as "DIAZ") was and is Store Manager for Defendants at the Evisu Retail Store.

38. DIAZ is a Hispanic male.

39. At all times material, JUSTIN KORKODIS (hereinafter referred to as "KORKODIS") was and is Marketing Director for the EVISU Defendants.

40. Around February 2023, Plaintiff commenced employment with Defendant in New York City.

41. Defendant hired Plaintiff as Director of Retail and Wholesale.

42. Plaintiff's employment was hired for a one year term – not as an at will employee.

43. This is critical, because Plaintiff would likely have been fired out of retaliation. But, because he was a for term contract employee, Defendant did not wish to incur the expense of terminating Plaintiff before his contract provision expired.

4

44. However, Defendant refused to renew the contract after it expired because of retaliatory animus.

45. Had Plaintiff been an at will employee, he most certainly would have been terminated for making complaints of discrimination.

46. Plaintiff's primary job duties and responsibilities regarding the wholesale aspect of the Defendant's business consisted of, including but not limited to, developing the wholesale business plan, execution of the wholesale business plan, meeting with wholesale accounts to increase wholesale sales.

47. Plaintiff's primary job duties and responsibilities regarding the retail aspect of Defendant's business consisted of, including but not limited to, setting goals for the Evisu Retail Store, sales generation for the Evisu Retail Store, hiring, training and managing the staff at the Evisu Retail Store, and interacting with retail customers.

48. The retail aspect of Plaintiff's employment was _far_ more lucrative financially, and were far more important to Defendants.

49. As well, growing the retail side would have been another significant matter for Plaintiff's resume.

50. Between around February 2023 through April 2023, Defendant had a directive to staff to lock the Evisu Retail Store door and stand by it whenever a group of around three or more black or Hispanic patrons were shopping in the store, which occurred on around a daily basis.

51. Defendant did not do this when groups of people of other races shopped at the Evisu Retail Store.

52. Around April 2023, Plaintiff instructed the Evisu Retail Store staff to not engage in this discriminatory practice.

53. However, Defendant continued its discriminatory policy; the Evisu Retail Store

staff disregarded Plaintiff's instructions and continued to engage in this discriminatory practice.

54. Around July 19, 2023, a group of around three black customers were shopping at the Evisu Retail Store.

55. Plaintiff noticed that Sales Manager FUENTA was standing by the door and had the door locked.

56. Plaintiff asked FUENTA, "why is this door locked?"

57. FUENTA then pointed to the black shoppers. This deeply offended Plaintiff.

58. Around April 11, 2023, CEO PUN visited the Evisu Retail Store.

59. DIAZ informed Plaintiff that CEO PUN told DIAZ that CEO PUN was surprised that black people shop at the Evisu Retail Store.

60. DIAZ further informed Plaintiff that CEO PUN told DIAZ that they need more white people to shop at the Evisu Retail Store.

61. Around June 4, 2023, COO HIU asked Plaintiff, "do we need to have black people in our marketing?"

62. Immediately, this ostracized Plaintiff, who is Black, and signaled to him that he was looked down upon.

63. This was simply another stone in a long road of pervasive discrimination by Defendant and Defendant's senior managers.

64. Plaintiff responded, "I think it is a wise choice to be diverse with our marketing because we are a global company."

65. Plaintiff then questioned COO HIU as to why she was asking this discriminatory question.

66. COO HIU said, "well because everyone was really upset about the last campaign because it featured a lot of black people and having black people in our marketing is not good for

sales."

67. Plaintiff was appalled and deeply offended by COO's HIU's response and told COO HIU, larger fashion companies like LVMG and Gucci reflect a diverse environment, and it shows in their marketing and they have stores all over the world.

68. Around two days later, Marketing Director KORKODIS told Plaintiff, "I am having a challenging time trying to convince Vanessa [COO HIU] and David [CEO PUN] why we need to have diversity in the marketing campaigns. I don't know what else to do. I feel like David [CEO PUN] will take it away from me."

69. Ultimately, around August 2023, CEO PUN did take the marketing campaign away from Marketing Director KOKODIS because KORKODIS sought to include minorities in the marketing campaign.

70. Around May 12, 2023, Plaintiff hired AUSTIN as a sales manager of the Evisu Retail Store.

71. Around June 12, 2023, Plaintiff hired COOK as a sales manager of the Evisu Retail Store.

72. This was met with hostility from HIU, who did not want more Black employees working for Defendants.

73. Specifically, Ms. Hiu told Plaintiff that Defendants demand all interviews be done in person or with a camera turned on to ensure that applicants "have the right look," and, explicitly, that they are not Black.

74. HIU and CHAN actually told Plaintiff, explicitly, that they are to vet out Black applicants by ensuring that cameras are turned on during interviews.

75. Around June 12, 2023, Plaintiff asked Assistant Manager WONG to provide COOK and AUSTIN with keys and the alarm code for the Evisu Retail Store, as one primary job duty for

7

COOK and AUSTIN was to open and close the store.

76. Defendants had previously provided the other sales manager, FUENTA, who was Asian, and on the same level as COOK and AUSTIN, with the key and alarm code to the Evisu Retail Store.

77. WONG told Plaintiff that she spoke with Sales Director CHAN and they decided that they were not going to provide COOK and AUSTIN with keys or the alarm code to the Evisu Retail Store.

78. Plaintiff asked WONG why.

79. WONG told Plaintiff that COOK and AUSTIN needed to complete training and sign off on paperwork before receiving the keys and alarm code to the Evisu Retail Store.

80. Throughout June 2023, on multiple occasions, Plaintiff contacted Sales Director CHAN, Vice President of Operations LAW, and COO HIU for COOK and AUSTIN to receive keys and the alarm code to the Evisu Retail Store.

81. In response, on multiple occasions, throughout June 2023, on around multiple occasions, Sales Director CHAN, Vice President of Operations LAW, and COO HIU for COOK and AUSTIN reiterated to Plaintiff that Defendant has written policy in place that requires COOK and AUSTIN to complete training and sign off on paperwork before receiving keys and the alarm code to the Evisu Retail Store.

82. Accordingly, throughout around June and July 2023, on multiple occasions, Plaintiff contacted Sales Director CHAN, Head of Human Resources CHEUNG, COO HIU, and Vice President LAW for the written policy that required employees to complete training and sign paperwork before receiving the keys and alarm code to the Evisu Retail Store.

83. CHAN, CHEUNG, HIU, LAW, and Defendants refused to provide Plaintiff with this policy, even though Plaintiff is in charge of running the Evisu Retail Store, and continued to

withhold the keys and alarm code to the Evisu Retail Store from COOK and AUSTIN.

84. Meanwhile, around mid June 2023, Plaintiff asked Assistant Manager WONG to produce her signed paperwork that authorized her to have the keys and alarm code to the Evisu Retail Store.

85. WONG did not respond, likely because Defendant did not require her to complete training or sign off on paperwork before receiving keys and the alarm code to the Evisu Retail Store.

86. Further, around mid June 2023, Plaintiff asked the other Sales Manager FUENTA if he had completed training and signed off on paperwork to receive the keys and alarm code to the Evisu Retail Store.

87. FUENTA told Plaintiff that he did not sign off on any paperwork or attend training in order to receive keys and the alarm code to the Evisu Retail Store.

88. Defendant refused to provide the keys and alarm code to COOK and AUSTIN because they were African-American and black.

89. Around mid-June 2023, Plaintiff emailed Human Resources Manager CHEUNG asking for the policy and documentation showing that employees at the Evisu Retail Store followed the policy in order to receive keys and the alarm code to the Evisu Retail Store and that they signed off on paperwork in order to receive keys and the alarm code.

90. Plaintiff asked CHEUNG for this information since Plaintiff was in charge of training and hiring at the Evisu Retail Store.

91. CHEUNG responded to Plaintiff, "I agree with you that there should be documentation, but unfortunately, I am not able to do anything about this."

92. CHEUNG and Defendant never provided the written policy or any documentation that employees of the Defendant completed training and signed off on paperwork prior to receiving

9

keys and the alarm code to the Evisu Retail Store.

**Retaliation facts**

93. From February to May 2023, Plaintiff was very successful as an employee.

94. Plaintiff worked directly supporting the retail and warehouse stores.

95. Plaintiff earned a substantial bonus from supporting and growing the retail side of Defendant Evisu.

96. Plaintiff was so successful, Defendant PUN offered Plaintiff the role of President of U.S. operations.

97. In May and early June 2023, Defendant PUN had Plaintiff pitch a role for the Presidency and the two had a number of meetings discussing and finalizing the particulars of the role.

98. After his complaints of discrimination, the role was never spoken of again.

99. After Plaintiff notified Defendants that he was raising claims of discrimination, his entire employment structure changed.

100. Throughout June and end of July 2023, on around six (6) occasions, Plaintiff made complaints of race/color/national origin discrimination to COO HIU, Human Resources Manager CHEUNG, and Vice President of Operations LAW for not providing COOK and AUSTIN with keys and the alarm code to the Evisu Retail Store.

101. Around August 3, 2023, Defendants retaliated against Plaintiff and removed Plaintiff's retail job duties under the guise that Plaintiff's wholesale job duties are much more important. However, this is pretextual as around May 31, 2023, CEO PUN told Plaintiff that he did not care about the wholesale side of the business and that retail should be the focus.

102. This financially impacted Plaintiff as retail profits accounted for 30% of his compensation structure.

103. Defendant retaliated against Plaintiff and stripped his retail job duties and responsibilities because he made repeated complaints of race/color/national origin discrimination.

104. Around August 21, 2023, COO HIU told Plaintiff that the reason CEO PUN "thinks you are not getting these wholesale accounts is because the way you look."

105. Plaintiff responded, "I am uncomfortable with all of this."

106. After Plaintiff made a complaint to the Equal Employment Opportunity Commission in July 2023, Defendants refused to consider Plaintiff for a promotion into the Presidency role considered in May and June 2023.

107. Instead, Defendant PUN assumed the role as a branch of his identity as CEO.

108. As well, after his formal complaint of discrimination, Defendants' employees were instructed not to speak to Plaintiff and to isolate him.

109. Plaintiff would, quite literally, approach an employee to speak to them, and they would walk away without saying anything.

110. The same is true for email and electronic communication – Plaintiff was simply ignored.

111. Defendants retaliated against Plaintiff for engaging in a protected activity.

112. As a result of the Defendants' conduct complained of herein, Plaintiff suffered and continues to suffer severe emotional distress.

# CAUSES OF ACTION
## FIRST CLAIM

**Race Discrimination under 42 U.S.C. 1981a, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law**

113. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 112 with the same force as though separately alleged herein.

114. Under 42 USC 1981a, Americans are afforded the right to be free from discriminatory animus.

115. The New York State and City Human Rights Laws track and expand Title VII, which, in turn, relies on the same analysis as 42 USC 1981. Specifically, the New York City Human Rights Law allows for more liberal pleading and proof standards than under Title VII.

116. The New York City Human Rights Law also allows for individual liability.

117. Claims are brought against Defendant PUN only under the New York City Human Rights law. All claims are brought against Defendant Evisu.

118. This claim for race discrimination encompasses both the differential treatment Plaintiff faced, and the hostile work environment he faced.

119. Plaintiff is a Black man.

120. Plaintiff was forced to witness rampant discrimination against Black customers shopping at Evisu.

121. Plaintiff was forced to witness blatant discrimination against Black employees and interviewees.

122. Plaintiff was discriminated against as Defendants instructed employees to, and they did in fact, treat Plaintiff less well because he is Black.

123. As such, Defendants intentionally and willfully violated Plaintiff's right to be free from discrimination, and owes Plaintiff all front pay, back pay, emotional distress

damages, punitive damages, attorney fees, costs, and expenses.

## SECOND CLAIM

**Retaliation under 42 U.S.C. 1981a, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law**

124. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 112 with the same force as though separately alleged herein.

125. Under 42 USC 1981a, Americans are afforded the right to be free from discriminatory animus. Likewise, they are afforded protection from retaliation when they complain about race discrimination.

126. The New York State and City Human Rights Laws track and expand Title VII, which, in turn, relies on the same analysis as 42 USC 1981. Specifically, the New York City Human Rights Law allows for more liberal pleading and proof standards than under Title VII.

127. The New York City Human Rights Law also allows for individual liability.

128. Claims are brought against Defendant PUN only under the New York City Human Rights law. All claims are brought against Defendant Evisu.

129. This claim for race discrimination encompasses both the differential treatment Plaintiff faced, and the hostile work environment he faced.

130. Plaintiff is a Black man.

131. Plaintiff was forced to witness rampant discrimination against Black customers shopping at Evisu.

132. Plaintiff was forced to witness blatant discrimination against Black employees and interviewees.

133. Plaintiff was discriminated against as Defendants instructed employees to, and they did in fact, treat Plaintiff less well because he is Black.

134. Plaintiff explicitly complained about being treated differently based on race.

13

135. Plaintiff was immediately retaliated against.

136. Plaintiff was stripped of job duties out of retaliation.

137. Plaintiff was not able to earn the same income as he did before he complained of discrimination because of Defendants' retaliatory animus and acts.

138. Plaintiff was denied the opportunity to work as the President of the U.S. operations for Evisu solely because he complained of discrimination.

139. Specifically, Defendants had considered employing Plaintiff for another three years in that role before it was revoked because of retaliatory animus.

140. As such, Defendants intentionally and willfully violated Plaintiff's right to be free from retaliation, and owes Plaintiff all front pay, back pay, emotional distress damages, punitive damages, attorney fees, costs, and expenses.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

C. For such other and further relief as the Court deems just and proper.

Dated:
August 20, 2025

**HARMAN GREEN PC**

By: *[signature: Walker Harman Jr.]*

Walker G. Harman, Jr.
140 Broadway, Fl 46
New York, NY 10005
824 Exposition Ave.,
Suite 8
Dallas, Texas 75226
(646) 248-2288
wharman@theharmanfirm.com
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*

15